Kenneth L. LYNCH, Plaintiff,

v.

The PUBLIC SERVICE COMMISSION OF the STATE OF NEVADA et al., Defendants,

The Interstate Commerce Commission et al., Intervening Defendants.

Civil A. No. LV–1805.

United States District Court,
D. Nevada.

May 17, 1974.

Morton R. Galane, Don C. Tingey, Las Vegas, Nev. and Harrison W. Hertzberg, Los Angeles, Cal., for plaintiff.

Atty. Gen. of Nev. Robt. List, Carson City, Nev., for defendants.

Fritz R. Kahn, Gen. Counsel, and Hanford O'Hara, Atty., Washington, D. C., for intervening defendant I. C. C.

Bryce Rea, Jr., and Patrick McEligot of Rea, Cross & Knebel, for intervening defendants National Motor Freight Traffic Assn., Inc., Regular Common Carrier Conference and Common Carrier Conference-Irregular Route.

Paul Rodgers and Sumner J. Katz, Washington, D. C., for intervening defendants National Ass'n of Regulatory Utility Commissioners.

Before MERRILL, Circuit Judge, EAST, Senior District Judge and FOLEY, District Judge.*

* Honorable Charles M. Merrill, United States Circuit Judge for the Ninth Circuit, William G. East, Senior United States District Judge for the District of Oregon, and Roger D. Foley, Chief Judge for the District of Nevada, constituting a statutory three-judge district court by superseding designation of Chief Judge Richard H. Chambers for the Ninth Circuit, dated August 24, 1972.

## DECISION.

EAST, Senior District Judge:

### NATURE OF THE CASE

The plaintiff (Lynch) instituted the action on April 18, 1972, against the Public Service Commission of the State of Nevada, a statutory agency of that state, which can sue and be sued, empowered under the laws of the State of Nevada to supervise and regulate the operating and maintenance of "public utilities," as defined under the laws of Nevada, including persons engaged in motor vehicle transportation activities as is plaintiff, and the named duly constituted Commissioners of the Public Service Commission in their official capacities (Commission).

Lynch seeks under his first cause injunctive and declaratory relief from the deprivation under color of statute, regulation, custom and usage of a right, privilege and immunity secured to Lynch under the due process clause of the Fourteenth Amendment to the United States Constitution; and under his second cause injunctive and declaratory relief from unlawful and discriminatory state-imposed burdens upon his interstate commerce enterprise under the Commerce Clause of the United States Constitution.

### JURISDICTION

We note the jurisdiction of this three-judge district court under 42 U.S.C. § 1983 and its jurisdictional counterpart, 28 U.S.C. § 1343(3) (Civil Rights) unhampered by the amount-in-controversy requirement of 28 U.S.C. § 1331; Lynch et al. v. Household Finance Corp. et al., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424, and 28 U.S.C. §§ 2281 and 2284.

### INTERVENORS

The intervenor Interstate Commerce Commission (ICC) appears as of right

and the intervenors National Motor Freight Traffic Association, Regular Common Carrier Conference, Common Carrier Conference-Irregular Route, and National Association of Regulatory Utility Commissioners (Intervenors) as interested parties were granted leave to intervene for guidance and assistance to the court.

## NEVADA STATUTES AND REGULATIONS INVOLVED

Nevada Revised Statutes, 706.260, now 706.266:

"1. It shall be unlawful for any common, contract or other motor carrier transporting property . . . for compensation or private carrier to operate as a motor carrier of interstate . . . commerce within or through this state, without first having furnished the [Commission]:

(a) [Evidence of compliance with provisions of Federal Motor Carrier Act and safety rules and regulations not involved herein].

(b) A current copy of its certificate, permits or *exemptions* [emphasis supplied] which have been issued by the Interstate Commerce Commission.[1]

(c) [Other information as may be required not involved herein].

2. Upon being notified by the commission that all requirements have been complied with and upon receipt of an application and the payment of a license fee, the department [of motor vehicles] shall issue such interstate or foreign motor carrier of property or passengers a license.

3. [Waiver of requirements not involved herein]."

Rule 224 of General Order No. 5, adopted by Commission effective December 1, 1962, provides in part:

"Every carrier engaged in interstate commerce in the transportation of exempt commodities under the provisions of Section 203(b)(6) of the Interstate Commerce Commission Act, applying for Commission approval for licensing, must supply the Commission with a letter from the District Supervisor of the Interstate Commerce Commission of his state of domicile stating that he is a carrier of record engaged in the transportation of exempt commodities before license will be approved by the Commission."

Nevada Revised Statutes, 706.660, now 706.701:

"1. No certificate of public convenience and necessity, permit or license issued in accordance with the terms of NRS 706.010 to 706.700, inclusive, shall be construed to be either a franchise or irrevocable.

2. The commission may at any time, for good cause shown, after investigation and upon 5 days' written notice to the grantee, suspend [emphasis supplied] any certificate, permit or license for a period not to exceed 60 days."[2]

## UNITED STATES STATUTE INVOLVED

49 U.S.C. § 303. (Vehicles excepted from operation of law.)

"(b) Nothing in this chapter [Interstate Commerce Act, Part 11, Motor Carriers], except the provisions of section 304 . . . relative to qualifications and maximum hours of service of employees and safety of operation or standards of equipment shall be construed to include . . . (6) motor vehicles used in carrying property[3] consisting of [exempt] . . . commodities . . ., if such motor vehicles are not used in carrying any other property, or pas-

---

1. A 1971 amendment to this section (NRS 706.266) does not modify or change subsection (b).

2. Likewise, a 1971 amendment to this section (NRS 706.701) does not modify or change this subsection 1.

3. Compare with other language used by Congress: § 303(b)(1) "vehicles used solely in transportation of children," (3) "vehicles used exclusively for transportation of hotel patrons," and (7) "vehicles used exclusively in distribution of newspapers."

sengers, for compensation:" [Mixed loads.]

## FACTS

We find from the allegations of the complaint and the agreed facts of record that:

Lynch was and now is a resident of the State of Utah, with his principal place of business in Utah, and a motor carrier engaged in the for-hire transportation in interstate commerce of primarily exempt commodities under § 303(b)(6) of the Interstate Commerce Act, and was and is desirous of, and finds it financially necessary to engage in transporting said commodities within or through the State of Nevada;

In June, 1961, Lynch was approved by the Commission, pursuant to NRS 760.-266, for § 302(b)(1) reasonable revenue and § 303(b), exception, lawful police power licensing (state license) as an exempt carrier, and annually thereafter through the year 1966 was issued a "cab card" and license plates by the Nevada Department of Motor Vehicles on a fee arrangement of two and one-half cents per mile traveled on Nevada highway, with a minimum guarantee of $100 annually. This type of fee arrangement was one of three types authorized in Nevada and involved the most practical and economical arrangement for the plaintiff's operations;

In May, 1964, Lynch in the United States District Court for Utah entered a guilty plea to five counts of unlawful transportation of non-exempt commodities in interstate commerce. Lynch was fined and placed on probation, and in June, 1966, the probation was revoked and his bail forfeited on other similar charges elsewhere;

Following inter-district communication, the supervisor of issuing ICC district office on October 19, 1966, and without notice to Lynch, recalled from the Commission the theretofore issued and then existing exemption letter held by the Commission as required by NRS 706.266;

On October 24, 1966, the Commission advised the Chief of the Motor Carrier Division of the Nevada Division of Motor Vehicles by letter with copy to Lynch, as follows:

"Dear Sir:

You are hereby notified that within five days from October 26, 1966, specifically November 1, 1966, this Commission is suspending for the balance of the year 1966 its approval of licensing for

W. E. Lynch, Sr.
3741 S. 2nd West St.
Salt Lake City, Utah 84115

Kenneth Lynch
3677 So. State St.
Salt Lake City, Utah

and/or William E. Lynch & Kenneth L. Lynch

dba Lynch & Lynch Trucking Co.
3741 So. 2nd West St.
Salt Lake City, Utah 84115

The named carriers are not in full compliance with the laws of this State."

Neither the ICC nor the Commission offered Lynch a pre-suspension or pre-withdrawal hearing of their respective duly issued and existing state license and exemption letter, nor did Lynch request any hearing on the Commission's action of October 24, 1966; however, the Nevada Division of Motor Vehicles after January 1, 1970, did issue to Lynch upon request some 300 48-hour temporary licenses for a fee of $40 each;

The practice was apparently not authorized as the implementing statute NRS 706.521 provides for only one such 48-hour temporary license, valid only for 10 days after issued, per year and has been discontinued;

The Commission has and now refused to issue Lynch under threat of prosecution any certificate or approval for state license to operate as a motor carrier transporting exempt commodities in interstate commerce within or through the State of Nevada without first having furnished the Commission with a letter

**1038**

or certificate of exemption issued by the ICC district supervisor; and

There is presently no pending viable Nevada state proceedings, civil or criminal, within which to relegate the federal issues raised herein.

## POSTURE OF THE CASE

The cause was heard upon the cross-motions of the parties for summary judgment in their favor respectively, and also, upon the oral motion of the Nevada defendants for dismissal of Lynch's first cause of action.

## LYNCH'S CONTENTIONS

Lynch's main and principal contention under his first claim is that the duly issued and existing state license issued to him pursuant to NRS 706.266 for the calendar year 1966 was wrongfully and unconstitutionally suspended under the provisions of NRS 706.701, subd. 2 for the reason that no pre-termination hearing was afforded him. Lynch also contends that the regulations of ICC providing for the issuance of letters of exemption are likewise unconstitutional and deprive him of due process in that his duly issued and existing letter of exemption was terminated without a pre-termination hearing.

Lynch's principal contention under his second claim is that NRS 706.266(b) wrongfully and unconstitutionally burdens interstate commerce in that it requires a *quad nullum est*, specifically, a letter or other indicia of "exemptions" which has no legal office, as a condition precedent for the approval of a state license for a carrier of exempt commodities transported in interstate commerce, to travel within or through Nevada. 49 U.S.C. § 3J3(b)(6) (Vehicles exempt from operation of law under the Interstate Commerce Act). That by reason thereof, his vehicle is prevented from carrying exempt commodities transported in an interstate commerce movement within and through the State of Nevada.

## DEFENDANTS' CONTENTIONS

The Commission, ICC and intervenors enter general denials and contend that the complaint fails to state a claim entitled to relief and that this court lacks jurisdiction.

The intervenors further contend that Lynch lacks standing to prosecute this action; however, ICC's principal contention is an avoidance of a federal claim against it and relies upon its gratuitous third party general practice since the early 1950's of issuing "an exemption letter to applicable State regulatory authorities indicating that the carrier" represented "it was engaged in the for-hire transportation of exempt commodities in interstate commerce," and in turn to request a return of the exemption letter upon *being informed* that the carrier was involved in incidents of unlawful transportation of non-exempt commodities. Further, that since November 7, 1967, that general practice has been supplemented and is now governed by ICC's co-operative agreement with the Commission entered on February 10, 1967, pursuant to provisions of 49 CFR, §§ 388.4, 388.5, 388.6 and 388.7, to enforce the economic and safety laws and regulations of the various states and the United States regarding highway transportation. 49 U.S.C. § 305(f).

These parties also urge this court to abstain from disposition of Lynch's claims and relegate the cause to the courts of Nevada.

## DISCUSSION

Lynch's Standing:

 We determine that this action is against the Nevada defendants and is an attack upon the Nevada statutes. The intervenor ICC is not a necessary party and no relief is sought against it or its decisions or orders. The acts of ICC employees come into play incidentally and only so far as those acts lawfully implement the challenged Nevada statutes. We believe under the facts that Lynch has standing herein. Younger v. Harris, 401 U.S. 37, at 42, 91 S.Ct. 746, 27 L.Ed.2d 669; Bantam Books, Inc. v. Sullivan, 372 U.S. 58, at 64 n. 6, 83 S.Ct. 631, 9 L.Ed.2d 584; and Baker v. Carr, 369 U.S. 186, at 204, 82 S.Ct. 691, 7 L.

Ed.2d 663. "It is, by now, clear that [Lynch's first claim] is not moot [as] it is 'capable of repetition, yet evading review.' Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911); see Moore v. Ogilvie, 394 U.S. 814, 816, 89 S.Ct. 1493, 1494, 23 L.Ed.2d 1 (1969)." Indiana Employment Division v. Burney, 409 U. S. 540, dissenting opinion at 544, 93 S. Ct. 883, 885, 35 L.Ed.2d 62.

■ It was § 305(f), Public Law 89– 170 (1965) that also gave Congressional authority to the several states to require registry of regulatory "certificate[s] of public convenience and necessity or permit issued by" ICC. 49 U.S.C. § 302(b)(2). Should there be any doubt that § 305(f) and § 302(b)(2) are geared and *apply only* to ICC *regulated* carriers, such doubt is wholly dispelled and removed by the defending parties' joint brief reiteration, page 19, of the Congressional intent as expressed in House Committee Report that "the principal purposes of the legislation was to halt:

. . . illegal for-hire trucking; that is, the transportation of *non-exempt commodities* [italics supplied] on a for-hire basis by persons not having authority to do so from the Interstate Commerce Commission or a State regulatory commission."

We think that the co-operative agreements authorized under § 305(f) and ICC's regulation thereunder apply to regulated carriers, and not exempt commodities carriers.

Abstention:

■ The suggestion of abstention is inviting, however, foreclosed under the full thrust of the rationale expressed in Gibson v. Berryhill, 411 U.S. 564, 93 S. Ct. 1689, 36 L.Ed.2d 488 (1973). See also Lake Carriers' Association v. MacMullan, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972); Turner v. City of Memphis, 369 U.S. 350, 82 S.Ct. 805, 7 L.Ed.2d 762 (1962); and McNeese v. Board of Education, 373 U.S. 668, 83 S. Ct. 1433, 10 L.Ed.2d 622 (1963).

Merits:

It is manifest from the records and files herein that there is no genuine issue among the parties as to any material fact, and the cause is disposable upon the merits under the cross-motions for summary judgment aforesaid. Rule 56(c), Federal Rules of Civil Procedure.

We start with the salient fact that Lynch in his interstate travels generally wears the white hat of a carrier of exempt commodities on his outbound trips, but on his back trips many times too often has attempted to use the white hat as a cover up for a cargo of non-exempt commodities in violation of United States and the situs state's laws. This is a reprehensible practice and a plague to proper licensing law enforcement well deserving of severe penalty as may be provided by law; however, the imposition of additional sanctions against the exercise of other lawful rights and privileges by reason of those violations is the hub of these proceedings. The two basic queries put to us under the respective contentions of the parties are simply these:

(1) Does the suspension provision of NRS 706.701, subd. 2 without expressly providing for a pre-suspension hearing meet minimal federal due process requirements?

(2) Does NRS 706.266, subd. 1(b) in conjunction with Rule 224 impose an unreasonable burden upon interstate commerce, specifically in requiring as a condition precedent "exemptions" and a "letter of exemption" before obtaining the Commission's approval of a state license for a carrier of exempt commodities transported in interstate commerce within and through Nevada?

Query (1):

The Commission, ICC and the intervenors argue that ICC's withdrawal of the letter of exemption, predicating the Commission's suspension of licensing approval, was occasioned only after

Lynch's plea of guilty to the non-exempt cargo violations and his admission that about ten per cent of his operation was the hauling of non-exempt commodities in violation of the United States and situs state's laws. Further, that those facts coupled with his failure to request a hearing of the Commission met reasonable due process in the suspension process. Furthermore, even though Lynch had had a pre-suspension hearing before the Commission, he had no valid defense. They rely upon Goldsmith v. United States Board of Tax Appeals, 270 U.S. 117, at 123, 46 S.Ct. 215, 70 L. Ed. 494, and kindred authorities, among which are Perry v. Sindermann, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); Arenas v. United States, 197 F.2d 418, at 422 (9th Cir. 1952); and Home Loan Bank v. Mallonee, 196 F.2d 336, at 380 (9th Cir. 1952). These parties, also, argue that a suspension of one's legal entitlement without a hearing is permissible if a pre-revocation of the entitlement hearing is afforded, citing Thornhill v. Kirkman, 62 So.2d 740, 742 (Fla.1953), and 1 Davis, Administrative Law, p. 439. Suffice to say that concept is so utterly eroded by subsequent holdings of the United States Supreme Court, later discussed, it is no longer tenable.

We read *Goldsmith* and kindred authorities as relating to a procedural due process based upon a "reasonable possibility" that the underlying basis for the administrative action is correct. That rationale is wholly distinguishable and non-applicable to the Commission's action under NRS 706.701, subd. 2 authority. We think that notion does not meet the tests of federal due process as laid down in Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 566 (1972); Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); and Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969). *Bell* states at 539:

"Once licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment. Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)."

and at 542,

"While '[m]any controversies have raged about . . . the Due Process Clause,' *ibid.*, it is fundamental that except in emergency situations (and this is not one) due process requires that when a State seeks to terminate an interest such as that here involved, it must afford 'notice and opportunity for hearing appropriate to the nature of the case' *before* the termination becomes effective. *Ibid.* Opp Cotton Mills v. Administrator, 312 U.S. 126, at 152–156, 61 S.Ct. 524, 85 L.Ed. 624; Sniadach v. Family Finance Corp., supra; Goldberg v. Kelly, supra; Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971)."

and at 541–542,

"The hearing required by the Due Process Clause must be 'meaningful,' Armstrong v. Manzo, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965), and 'appropriate to the nature of the case.'"

In *Fuentes*, supra, at 87, the Court states:

"The right to be heard does not depend upon an advance showing that one will surely prevail at the hearing. 'To one who protests against the taking of his property without due process of law, it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits.' Coe v. Armour Fertilizer Works, 237 U.S. 413, 424, 35 S. Ct. 625, 629, 59 L.Ed. 1027."

*Coe*, supra, at 424 further says:

" 'It is not enough that . . . [one] . . . may by chance have notice, or that . . . [one] . . . may as a matter of favor have a hearing. The law must require notice to them, and give them the right to a hearing and an opportunity to be heard.' "

The defending parties also argue that Lynch has chosen to ignore and bypass Nevada court remedies open to him. While the Nevada courts may well have concurrent jurisdiction, nevertheless Lynch may seek his federal civil rights remedies in this first sought forum. Gibson v. Berryhill, supra.

Query (2):

We begin with the basic fundamental principle that ICC's regulatory powers and authority over motor carrier interstate commerce transportation are no more and no less than as expressly and impliedly delegated to it by the Congress. The Congress in its legislative wisdom has seen fit to expressly "exempt" from the regulatory authority of ICC "motor vehicles *used in* carrying" exempt commodities. § 303(b)(6).

The defending parties have referred us to no expressed Congressional authority to ICC to either issue or to suspend or terminate an exemption letter or any other indicia of exempt motor vehicles.

In fact, counsel for ICC candidly concedes that the ICC has no regulatory authority over bona fide exempt carriers.[4] However, they urge in essence that because of widespread violations in the area of regulated truck commerce and the necessity of close state-federal cooperation to halt the same, the ICC must have some implied authority to sanction a given cargo of exempt commodities.

It is indeed a bizarre legal concept to urge that an area of motor vehicle interstate commerce, which Congress has expressly exempted from ICC authority and regulation, somehow becomes regulated by ICC's adoption of regulations to be implemented on employee discretion. Such thesis is again, or at least a variation of, the "tainted" *vehicle or owner concept* and is wholly without merit as to any given cargo of exempt commodities. *Newton*, infra.

Finally, the defending parties urge that ICC in light of its general authority to regulate interstate commerce has implied economic authority to designate in its expertise given commodities as exempt or non-exempt, citing Air Dispatch, Inc. v. United States, 237 F.Supp. 450 (E.D.Pa.1964), aff'd 381 U.S. 412, 85 S.Ct. 1576, 14 L.Ed.2d 693 and kindred authorities. These authorities dealt generally with ICC's authority to determine, under due process proceedings, what given vehicle, enterprise or commodity *was in fact* exempt or non-exempt under the various sub-numbered parts of § 303(b). See, however, Gold Kist, Inc. v. United States, 339 F.Supp. 1249 (N.D.Ga.1971), aff'd 409 U.S. 808, 93 S.Ct. 106, 34 L.Ed.2d 67, wherein ICC authority to determine exempt or non-exempt character of a given commodity is fully reviewed and limited to the legal determination of Congressional intent and express wording of the exemption.

In any event, whatever authority ICC does hold to determine whether a given commodity is exempt or non-exempt is beside the point when Lynch's vehicle is in fact carrying § 303(b)(6) exempt commodities.

> The poultry items "[are] exempt from economic regulation by [ICC] under the provisions" of § 303(b)(6). Gold Kist, Inc., supra, at 1256.

> Scoured wool falls within the designation of "agricultural commodities" as contemplated by the Interstate Commerce Act and trucker was not required to have certificate of public convenience and necessity, permit, or

---

4. Previously the Commission had jurisdiction over such carriers with respect to safety of operations, but this function was transferred to the United States Department of Transportation in 1966.

any other authority from the Interstate Commerce Commission to transport such wool by motor vehicle in interstate commerce for compensation. § 303(b)(6). Interstate Commerce Commission v. Wagner, D.C., 112 F. supp. 109.

"The provision [§ 303(b)(6)] is an exemption from the general terms of the statute and as such must be strictly construed." Interstate Commerce Commission v. Weldon, D.C., 90 F. Supp. 873, aff'd, 6 Cir., 188 F.2d 367.

 The withdrawal of the letter of exemption by ICC's supervisor was not because Lynch's vehicle did not carry exempt commodities, but on the contrary, because on ten per cent of the trips he carried non-exempt commodities in violation of ICC regulations. This was purely an unlawful sanction against Lynch aimed at depriving him of the right to carry exempt commodities transported in interstate commerce within and through Nevada. We cannot accept the Commission's and ICC's argument that continued violations by a carrier of other United States interstate commerce laws, specifically the transportation of non-exempt commodities without holding a certificate of public convenience and necessity, or other violation of valid ICC regulations, somehow contaminates and deprives a given motor vehicle of the character of the exempt load actually involved. Such a rationale depends upon a classification of an ongoing interstate commerce operation or a percentage of such an operation, rather than upon a classification of the load actually being transported. Since we are not concerned with mixed loads of exempt and non-exempt commodities, it follows that Lynch's given load is either (a) exempt commodities or (b) non-exempt commodities. Category (a) is free of ICC regulation and category (b) is subject to ICC regulation and penalty for violation thereof. Additional penalty or sanctions against a given exempt cargo, as an aid to enforcement of valid ICC regulations and an additional penalty for violation thereof, is perhaps desirable,

but nevertheless is not within ICC's authority. This reasoning finds support in the language of Lester C. Newton Trucking Company v. United States and Interstate Commerce Commission, 264 F.Supp. 869 (D.Delaware 1967), aff'd 381 U.S. 30, 88 S.Ct. 108, 19 L.Ed.2d 29. In a discussion of the effect of § 303(b)(6), *Newton* at 874 states: "[T]he courts held that the exemption extended to all transportation of exempt agricultural commodities even in 'tainted' [vehicles used for carrying non-exempt products] vehicles except in mixed loads with non-exempt products." Again, at 876, " 'Agricultural commodities' are those products, whatever they might be at any point in time, which are exempt under [§ 303(b)(6)] of the Interstate Commerce Act when carried in straight loads. Therefore, the purpose of a Commission 'agricultural commodities' certificate can only be to authorize the transportation of these items in mixed loads with non-exempt goods."

It follows then that NRS 706.266, subd. 1(b) cannot be applied to close legal entry upon the highways of Nevada to a motor vehicle carrying exempt commodities in interstate commerce transportations by requiring a legal impossibility, that is, ICC issued "exemptions" as a condition precedent in order to acquire the Commission's approval for a motor vehicle's state license. Such a state requirement is not only an unreasonable burden upon interstate commerce, but, in fact, a solid barrier to the free flow of a substantial quantity of commodities being lawfully transported by motor carrier in interstate commerce. We comment that the acquisition of an ICC indicia of continuing exemption is a legal fiction or a non-existing legal entitlement. Therefore, a state's requirement of the production thereof is a legal impasse and another example of the legal writers' phrase "Catch 22."

 It is axiomatic that the Commerce Clause of the United States Constitution bars the states from the regulation of interstate commerce and re-

strains the states from imposing unreasonable burdens upon it. Freeman v. Hewit, 329 U.S. 249, 67 S.Ct. 274, 91 L. Ed. 265 (1946).

We are satisfied that for the purposes of this cause there is and can be no genuine issue as to any material fact and that Lynch is entitled to relief as a matter of law.

## CONCLUSIONS

Accordingly, we conclude that:

Lynch's first claim:

The failure of NRS 706.701, subd. 2 to provide for a meaningful presuspension hearing for a holder of the Commission's issued and existing approval for state license renders a suspension order thereunder violative of the due process clause of the United States Constitution. Lynch is entitled to declaratory relief to that effect.

Lynch's second claim:

The commerce clause of the United States Constitution is violated by NRS 706.266, subd. 1(b) and Rule 224 insofar as they require (a) that as a condition precedent to right of entry and lawful use of Nevada highways a motor vehicle carrier engaged in transporting exempt commodities in interstate commerce shall furnish or supply the Commission with ICC "exemptions"; and (b) that as a condition precedent to the Commission's approval for a state license, such carrier shall supply the Commission "with a letter from [ICC] stating that he is a carrier of record engaged in the transportation of exempt commodities." Such provisions are accordingly invalid and unenforceable, and Lynch is entitled to declaratory relief to that effect and to restrain against their enforcement.

To the extent of the foregoing conclusions, the motion of Lynch for summary judgment should be granted, and the several motions to dismiss and for summary judgment of Commission, ICC and the intervenors should be denied.

It is not for us to suggest in what way, but for the legislature of the State of Nevada to provide appropriate statutory authority and the Commission to prescribe appropriate procedures, which are free of constitutional impingements as above found, for obtaining the Commission's approval for entry and state licensing of motor vehicles carrying § 303(b)(6) exempt commodities in interstate commerce transportation within and through Nevada; and for the suspension and revocation of duly issued and existing approval for entry and state licensing. We do not mean in the foregoing observation to impose restriction upon any measures the ICC and Nevada may wish to undertake co-operatively respecting exchange of information, letters, etc., so long as burdensome significance is not attached by Nevada to the absence of a letter of exemption or similar communication.

Counsel for Lynch is requested to prepare, serve and submit appropriate form of orders, judgment and decree based on the foregoing decision.