**Shane BOWLIN, et al., Plaintiffs,**

v.

**DESCHUTES COUNTY, et al.,
Defendants.**

**CV No. 88–6437–E.**

United States District Court,
D. Oregon.

Dec. 27, 1988.

Kerry L. Rydberg, Eugene, Or., for plaintiffs.

Robert E. Franz, Jr., Eugene, Or., and Robert S. Wagner, Schwabe, Williamson, Wyatt, Moore & Roberts, Portland, Or., for defendants.

## OPINION AND ORDER

JAMES M. BURNS, District Judge.

## I. BACKGROUND

Federal courts used to be viewed as austere, even learned tribunals, normally charged with such duties as the interpretation of statutes enacted by Congress; once in a while we are asked to consider one of the cherished clauses of our Constitution; and for the rest we would on occasion ponder over lofty—and legally difficult—questions which may even on occasion attract the attention of the highest court in the land. Not any more.

Thanks to the expansion of civil rights jurisprudence, this is now a "doggie"[1] court.[2] Indeed this case is an animal "double header" since it involves both dogs and llamas!

It is, in one sense, a fairly straightforward case. Taz, a Malemute–Akita owned by plaintiff Bowlin, was accused of chasing and injuring several of a neighbor's llamas in Deschutes County in January 1987, triggering the provisions of the County's dog control ordinance. The ordinance authorizes dogs to be humanely destroyed when found to have been "killing, wounding, injuring or chasing livestock." See § 10, Deschutes County Ordinance No. 86–037. The Board of County Commissioners, after hearing evidence pro and con, found the accusations true and ordered humane destruction of Taz. Bowlin thereafter pursued state court remedies to a fare-thee-well. He sought a writ of review, which Circuit Judge Thomas M. Mosgrove, by written opinion on April 21, 1987, denied. He appealed, and, again by written opinion (May 11, 1988), Court of Appeals Judge Graber, writing for a panel which included Judges Warden and VanHoomissen, denied relief and affirmed the lower court's order. *Bowlin v. Deschutes County,* 91 Or.App. 155, 754 P.2d 30 (Or.App.1988). The Oregon Supreme Court denied review on August 30, 1988, 306 Or. 527, 761 P.2d 928 (1988).

Plaintiffs now seek an injunction against the destruction of Taz. Barring intervention, by the Court of Appeals, I find and hold this canine odyssey must come to an end, (at least at the trial level) even though plaintiff's pleadings bristle with weighty constitutional issues. Three judicial bites at the llamas are enough.[3]

## II. FINDINGS OF FACT[4]

1. Plaintiff Shane Bowlin is the sole owner of Taz, a Malemute–Akita dog. I do not find ownership of Taz by Ray Bowlin, as claimed at the hearing. Ray Bowlin is Shane Bowlin's father.[4a] (See Exhibit 11,

---

1. For the benefit of my colleagues who serve on those State Courts which hear and decide disputes about dogs, I hasten to add that I intend nothing derogatory by employing this familiar term for such tribunals or for the judges who preside over these canine controversies. Ever since dogs have been domesticated, they have stirred man's emotions. [See Appendix A] The noble qualities of dogdom have stirred the spirits of poets, versifiers and song writers. I guess it should not seem strange, therefore, to find that dogs—and those who love them—would manage to find their way to the federal courthouse to seek to protect them from harm after lack of success in the State Courts.

2. With the advent of such statutes as the Endangered Species Act (ESA) 16 U.S.C. § 1531, *et seq.,* many of us—at all levels—have taken a turn with mundane and exotic animals. The snail darter required the attention of Chief Justice Burger and his eight colleagues in *Tennessee Valley Authority v. Hill,* 437 U.S. 153, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978). My colleagues in the West, especially in Nevada, frequently rule on cases involving wild horses being rounded up, or sold, or fed, or not being fed, or being adopted, or not. Cases include these: *Animal Protection Inst. of America v. Hodel,* 860 F.2d 920 (9th Cir.1988); *American Horse Protection Ass'n v. Watt,* 679 F.2d 150 (9th Cir.1982); *American Horse Protection Ass'n v. Andrus,* 460 F.Supp. 880 (D.Nev.1978), aff'd in part, vacated in part and remanded, 608 F.2d 811 (9th Cir. 1979). Here in Oregon Judge Redden has become our resident expert on the gypsy moth,

*Oregon Environmental Council v. Kunzman,* 817 F.2d 484, 17 ELR 20, 756 (9th Cir.1987), and Judge Frye on the spotted owl, *Portland Audubon v. Hodel,* No. 87–1160 slip op. (Not published) (D.C.Or.1988). The following cases are from the menagerie of the federal courts: *Foundation for North Am. Wild Sheep v. Dep't of Agriculture,* 681 F.2d 1172; (9th Cir.1982) (Desert Bighorn Sheep); *Friends of Endangered Species, Inc. v. Jantzen,* 760 F.2d 976, 986 (9th Cir.1985) (Mission Blue Butterflies); *Palila of Hawaii Dept. of Land,* 852 F.2d 1106 (9th Cir. 1988) (endangered specie of bird); *Bob Marshall Alliance v. Hodel,* 852 F.2d 1223 (9th Cir.1988) (grizzly bear, gray wolf, peregrine falcon, bald eagle, moose, etc.) and *Sierra Club v. Froehlke,* 534 F.2d 1289, 1303 (8th Cir.1976) (Indiana bats found, interestingly enough, primarily in Missouri, Kentucky and Tennessee).

3. Counting only bites in court; the record is somewhat unclear as to how many of the Llamas were actually bitten by Taz, however I find one or more were.

4. This opinion constitutes the findings of fact and conclusions of law that form the basis of my order denying plaintiffs' motion for a preliminary injunction. Fed.R.Civ.P. 52(a).

4a. While both Shane and Ray Bowlin testified under oath at the preliminary injunction hearing that they were co-owners, that testimony is rejected since I find it lacks credibility. Indeed, it seems strange that these two would so testify

letter from Ray Bowlin to Ms. Green dated March 21, 1988.)

2. Plaintiffs Ray and Shane Bowlin received notice of the hearings before the Deschutes Board of County Commissioners (hereinafter "Commissioners"). The notice provided "interested persons may appear and present evidence." Plaintiff Shane Bowlin was personally served notice, and both Bowlins attended and offered evidence.

3. The Petition for Writ of Review contained the following claims:

(a) The Commissioners rendered a decision that is unconstitutional by virtue of an arbitrary and capricious determination that Llamas constitute "livestock" as a matter of law. The term "livestock" is not defined in Ordinance 203.1, which ordinance the Commissioners proceeded under in arriving at their decision. Petitioner was further deprived of fundamental due process rights in that he was not afforded an opportunity to confront witnesses who presented evidence at the hearing on February 6, 1987 or the hearing on February 11, 1987.

(b) The Commissioners improperly construed the applicable law. As previously alleged, Ordinance 203.1 does not define the term "livestock". To the extent the Commissioners relied on the definition of "livestock" in ORS 609.010, it does not include Llamas. ORS 609.010 through 609.190 are binding on respondent to the extent they are not inconsistent with respondent's ordinance.

(c) The Commissioners failed to follow the procedure applicable to the matter before it. Ordinance 203.1 provided for a hearing before the Dog Control Board and for appeal to the Commissioners. Petitioner was not afforded a hearing

before the Dog Control Board. The ordinance further provided for the administration of certain tests by a licensed veterinarian. A licensed veterinarian did not administer such tests pursuant to provision by the Dog Control Board.

The Commissioners further reconsidered, on February 11, 1987, their decision of February 6, 1987, without allowing petitioner to submit additional evidence on his behalf in response to the matters reconsidered.

(d) The Commissioners made a finding and order not supported by substantial evidence in the whole record. The evidence does not support the finding that petitioner's dog "chased livestock" on another's property, or the finding that petitioner's dog was "observed biting and chewing on a Llama." The evidence further does not support an identification of petitioner's dog as the dog observed on the property of the owener's [sic] Llamas.

The record is misleading as to the identification of petitioner's dog, and petitioner therefore requests an evidentiary hearing as to the issue.

4. Plaintiffs' then counsel, Mr. Brown, abandoned the positions in (c).

Mr. Brown: I am abandoning C in its entirety, both as to the lack of a hearing before the Dog Control Board and as to the administration [sic] test by a licensed veterinarian. Also, that portion that is in C, the second paragraph, having to do with the reconsideration, [sic] abandoning that argument as well.

(Transcript of hearing on March 23, 1987 before Deschutes County Circuit Judge Thomas M. Mosgrove, page 2.)[5]

in view of the statements made earlier by them since no motive would seem to exist. In any event, I find that the overall facts are set forth in the record made of the hearing by the Deschutes County Board. It found Taz to have been the dog which chased and injured the Llamas. If I were required to make a finding on that issue, in light of the Bowlins' testimony before me, I would have no trouble finding against their claim that Taz was the dog in question.

5. Judge Mosgrove addressed briefly 4(C) of plaintiffs' writ of review. On page 5 of Judge Mosgrove's written opinion, he addresses briefly the plaintiffs' claim that the Commission failed to follow proper procedures, holding only that, "[t]he respondent was correct that under Ordinance 86.037 [the amendment to Ordinance 203.1] the Dog control Board is abolished and replaced by the Board of County Commissioners."

5. The issues in a, b, d were heard before Judge Mosgrove on March 23, 1987. A written opinion was issued by Judge Mosgrove on April 21, 1987.

6. Plaintiffs sought review by the Oregon Court of Appeals. The plaintiff did not challenge the finding that Taz had attacked the llamas. Rather, he challenged the holding that the Commissioners' could, under the ordinance include llamas within the definition of livestock. This was the sole issue Judge Graber addressed in her written opinion for the Court of Appeals filed May 11, 1988.

## STANDARDS FOR PRELIMINARY INJUNCTION

In the Ninth Circuit, the following standards govern the granting of preliminary injunctive relief:

'To obtain a preliminary injunction, a party must show either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in its favor.' *Portland Feminist Womens' Health Ctr. v. Buhler,* No. 86–4102; 86–4140 slip op. at 12627, 12628 [859 F.2d 681, 684,] (1988) (*quoting, Apple Computer Inc. v. Formula Int'l., Inc.,* 725 F.2d 521, 523 (9th Cir.1984)).

The above alternative tests are not two entirely separate tests but rather extremes on a single continuum; the irreducible minimum chance of success that will suffice is "a fair chance of success on the merits." *Benda v. Grand Lodge of Intern Assn., etc.,* 584 F.2d 308, 315 (9th Cir.1978).

The critical element in determining the test to be applied is the relative hardship of the parties. If the balance of harm tips decidedly toward the plaintiff, the plaintiff need not show as robust a likelihood of success on the merits, although the plaintiff must at a minimum have a fair chance of success on the merits. Thus, the necessary showing of likelihood of success on the merits decreases as the balance of hardships increases in favor of the movant. *Aleknagik Natives Ltd. v. Andrus,* 648 F.2d 496, 502 (1980) [citations omitted]

From the outset, I do not nearly find even a "fair chance of success on the merits". In any event, I find that the state courts have fully and fairly addressed plaintiffs' claim and I am therefore precluded from readdressing these claims.

## RES JUDICATA AND COLLATERAL ESTOPPEL

In 28 U.S.C. § 1738 it provides that state judicial proceedings be afforded full faith and credit. *Migra v. Warren City School District Bd. of Education,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984).

" '[A] federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the state in which it was rendered.' " *MIR v. Little Co. of Mary Hosp.,* 844 F.2d 646, 651 (9th Cir.1988) (Civil rights claim citing *Migra,* 104 S.Ct. at 896).

The law of the state governs the determination of preclusion under the doctrines of *res judicata* and collateral estoppel. *Heath v. Cleary,* 708 F.2d 1376, 1379 (9th Cir.1983); *McClure v. Santos,* 669 F.Supp. 344 (D.Or.1987) (Opinion by Marsh, J.).

Oregon law provides that collateral estoppel 'is a term which describes these results: When an issue of ultimate fact has been determined by a valid and final judgment, that determination also settles the same issue in another action (a) between the same parties on a different claim, and (b) against persons who are so closely identified with a party that they are said to be "in privity" with parties to the earlier civil action.' *State Farm Fire & Casualty v. Reuter,* 299 Or 155, 700 P.2d 236 (1985).

*McClure,* 669 F.Supp. at 345.

The first question under Oregon law in deciding whether the doctrine of collateral estoppel applies, is whether the identical questions at issue here were decided in the prior action. *In re Jordan,* 295 Or. 142, 149, 665 P.2d 341 (1983). Where the issues are identical and those particular issues were decided, relitigation of the issues is precluded by the doctrine of collateral estoppel. "... if the party received a full, complete, and fair opportunity to litigate

the issue[s] upon which his [or her] rights depend." *McClure,* 669 F.Supp. at 345 (citing *Bahler v. Fletcher,* 257 Or. 1, 6, 474 P.2d 329 (1970).)

The Supreme Court has held that "it is well established that judicial affirmance of an administrative determination is entitled to preclusive effect." *McClure,* 669 F.Supp. at 345 (quoting *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 480 n. 21, 102 S.Ct. 1883, 1896 n. 21, 72 L.Ed.2d 262 (1982).)

DISCUSSION

Plaintiffs request the court to issue a preliminary injunction to stay the execution of Taz. The questions posed here by the plaintiffs follow:

A. Does Deschutes County ordinance 203–1 as amended by ordinance no. 86–037, violate the Fourteenth Amendment to the U.S. Constitution because it does not require notice and a hearing before taking property?

B. Does the Fourteenth Amendment to the U.S. Constitution require that plaintiff's be allowed to confront and cross-examine witnesses?

C. Did the County's failure to follow the procedures in ordinance 203–1 violate plaintiff rights to fundamental fairness?

D. Is Deschutes County's inclusion of Llamas in its interpretation of its Ordinance 203–1 pre-empted by federal law?

The plaintiffs argue that if Taz is killed before this court reviews their constitutional claims they will suffer irreparable harm, in that any possible remedy surviving the destruction of Taz would be woefully inadequate.

Plaintiffs argue that the fourteenth amendment requires due process when a property interest is at stake. *Vanelli v. Reynolds School Dist. No. 7,* 667 F.2d 773, 777 (9th Cir.1982); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.

2d 548 (1972). Plaintiffs further contend that dogs are personal property under ORS 609.020. It is plaintiffs' position that despite receiving notice and a hearing they are denied due process because Deschutes County Ordinance 203–1 does not require notice and a hearing and that therefore, the statute is unconstitutional on its face. *Phillips v. San Luis Obispo County, et al.,* 183 Cal.App.3d 372, 228 Cal.Rptr. 101 (2d Dist.1986).

In *Phillips,* petitioners' dog was to be destroyed under an ordinance very similar to 203–1. The Atascadero City ordinance however, involved the biting of people instead of livestock. The court held the Atascadero Ordinance unconstitutional on its face because it did not provide for notice and a hearing, despite the fact that the dog's owners had received notice and a hearing. The plaintiffs argue that the Commissioners' meeting was not required, therefore, it can not cure the ordinances unconstitutionality. *Coe v. Armour Fertilizer Works,* 237 U.S. 413, 424–25, 35 S.Ct. 625, 629, 59 L.Ed. 1027 (1915); *Lynch v. Public Service Commission of State of Nevada,* 376 F.Supp. 1033, 1040–41 and 43 (D.Nev.1974).

Next the plaintiffs argue that the Commissioners failed to allow them to confront and cross-examine witnesses. Furthermore that the Commissioners failed to follow the procedures required by Ordinance 203–1 Section 9(b) which requires certain tests by a licensed veterinarian.

I choose not to follow *Phillips;* it is neither binding upon this court nor is its rationale persuasive based on the facts and the record before me.

Plaintiffs also rely on *Coe v. Armour Fertilizer Works,* 237 U.S. 413, 35 S.Ct. 625, 59 L.Ed. 1027 (1915) [6] which is distinguishable based on the nature of the different types of property involved.[7]

---

**6.** In *Coe,* the Supreme Court invalidated a Florida statute permitting execution against a stockholder for the unpaid subscription to the stocks he held when the corporation against which judgment has been entered had no assets. *See Coe,* 237 U.S. 413, 421, 35 S.Ct. 625, 627.

**7.** This case is distinguishable from *Coe* in part, because historically, property in dogs has been considered "... of an imperfect or qualified nature" dogs and their owners have "... been subjected to peculiar and drastic police regulations by the State without depriving their owners of any federal right." *Nichia v. People of*

It is true that under the fourteenth amendment no state can deprive a person of his life, liberty, or property without due process of the law; but in determining what is due process of the law we are bound to consider the nature of the property, the necessity for its sacrifices, and the extent to which it has heretofore been regarded as within the police power.

*Sentell v. New Orleans & C.R. Co.,* 166 U.S. 698, 17 S.Ct. 693, 41 L.Ed. 1169 (1897).

I duly note the line [8] of Supreme Court cases, including *Coe* which hold to the effect that a litigant may challenge the constitutionality of a notice provision despite having received some form of notice.

"Nor can extra-official or casual notice, or a hearing granted as a matter of favor or discretion, be deemed a substantial substitute for the due process of law that constitution requires."

*Coe,* 237 U.S. 413, 424, 35 S.Ct. 625, 629.

However, reading *Coe* in light of subsequent cases [9] with a mind to the court's self-imposed rules of judicial restraint, *see United States v. Raines,* 362 U.S. 17, 21–22, 80 S.Ct. 519, 522–23, 4 L.Ed.2d 524 (1960), I find that *Coe* lacks the vitality under this set of facts to tip the balance in plaintiff's favor.

Plaintiffs argue that the Supreme Court specifically acknowledges an exception under 28 U.S.C. § 1738 where there are issues plaintiffs are not permitted to fully and fairly litigate. The Supreme Court in *Kremer* held:

The State must, however, satisfy the applicable requirements of the Due Process Clause. A State may not grant preclu-

sive effect in its own courts to a constitutionally infirm judgment, and other state and federal courts are not required to afford full faith and credit to such a judgment.

456 U.S. 461, 482, 102 S.Ct. 1883, 1898.

The above limitation applies to both *res judicata* and collateral estoppel. *Id.* at 482 n. 22, 102 S.Ct. at 1897 n. 22.

The constitutionality of the Commissioners' hearing and the constitutionality of the ordinance were raised by the plaintiffs in their petition for writ of review. Plaintiffs at that time had the right to contest all aspects of the constitutionality of the ordinance and the decision reached by the Deschutes County Commission. Defendants contend that, despite plaintiffs' current emphasis on different aspects of the hearing and ordinance, this court should give full faith and credit to the state court's decisions.

To determine whether a party received a full and fair opportunity to litigate an issue "for purposes of collateral estoppel, the inquiry is whether the minimum due process requirements guaranteed by the fourteenth amendment are satisfied." *McClure,* 669 F.Supp. at 346 (citing *Kremer v. Chemical Construction Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)).

... Where we are bound by the statutory directive of § 1738, state proceedings need do no more than satisfy the minimum procedural requirements of the fourteenth amendment's Due Process clause in order to qualify for full faith guaranteed by federal law....

As we recently noted in *Allen v. McCurry, supra,* [449 U.S. 90 at 96, 101 S.Ct.

---

*State of New York,* 254 U.S. 228, 230–31, 41 S.Ct. 103, 103–04, 65 L.Ed. 235 (1920); *Sentell v. New Orleans & C.R. Co.,* 166 U.S. 698, 17 S.Ct. 693, 41 L.Ed. 1169 (1897); *Hofer v. Carson,* 102 Or. 545, 203 P. 323 (1922); 15 ALR 2d 1024 "Dog–Destruction—Validity of Statute".

**8.** *Coe v. Armour Fertilizer Works,* 237 U.S. 413, 424–25, 35 S.Ct. 625, 629, 59 L.Ed. 1027 (1915); *Wuchter v. Pizzutti,* 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446 (1928); *See also, Wiren v. Eide,* 542 F.2d 757, 762 (9th Cir.1976).

**9.** The Ninth Circuit has on occasion distinguished from *Coe* cases where the complainant

actually received notice and therefore lacked the requisite standing to pursue a due process claim having actually been accorded notice and a hearing. *Wiren v. Eide,* 542 F.2d 757, 762 (9th Cir.1976); *Katz v. Ke Nam Kim,* 379 F.Supp. 65, 69 (plaintiff had no standing to raise a speculative issue of whether challenged statute would violate the constitutional right of third parties); *but c.f. Fry's Food Stores of Arizona v. CBM of Arizona,* 636 F.Supp. 168, 171 (D.Ariz.1986) and *Lynch v. Public Service Commission of State of Nevada,* 376 F.Supp. 1033 (D.Nev.1974).

411 at 415, 66 L.Ed.2d 308 (1986)] 'though the federal courts may look to the common law or to the policies supporting *res judicata* and collateral estoppel in assessing the preclusive effect of decisions of other federal courts, Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the state from which the judgments emerged would do so.'

*McClure,* 669 F.Supp. at 346, 347 (citing *Kremer,* 456 U.S. at 481–82, 102 S.Ct. at 1897–98).

In Oregon, *"Res judicata* applies to preclude an entire claim when that claim has been litigated, or in certain circumstances, could have been litigated." *State v. Ratliff,* 304 Or. 254, 257 n. 4, 744 P.2d 247, 248 n. 4 (1987); 456 U.S. 461, 482, 102 S.Ct. 1883, 1898.

I find that plaintiffs in this case have been afforded a full and fair opportunity to litigate the issues. The doctrines of *res judicata* and collateral estoppel bar this court from relitigating the issues that were or could have been addressed by the state courts.

Plaintiffs also claim interpreting 203–1 to include Llamas violates the supremacy clause and is therefore unconstitutional. This claim lacks sufficient merit to justify discussion.

For the foregoing reasons, I find and hold that the motion for preliminary injunction should be and is denied. The parties may wish to confer to see if they can agree with me that this be treated as being on the merits under Rule 65, Fed.R.Civ.P., since it seems unlikely that any more facts would be developed than were presented at the hearing.

I anticipate that plaintiff will be sufficiently disappointed to appeal, and, no doubt, to seek a stay from the Court of Appeals. To save expense of plaintiff's filing a motion under Rule 62, I will, on my own motion, grant a limited stay of about three weeks for plaintiff to apply for a further stay, if they wish, from the Court of Appeals. Thus, defendants are not entitled to carry out the humane destruction of Taz until the 16th day of January 1989, and until later, of course, if the Court of Appeals so orders.

IT IS SO ORDERED.

## APPENDIX A

Even a brief tour through Bartlett's, Hoyt's or any other book of quotations will yield a rich harvest of encomiums. Only a few unfavorable comments can be found; I list only a couple of these, while I list several of the favorable type:

The one absolutely unselfish friend that man can have in this selfish world, the one that never deserts him, the one that never proves ungrateful or treacherous, is his dog.... He will kiss the hand that has no food to offer.... When all other friends desert, he remains. [George G. Vest: in a speech in the U.S. Senate, 1884]

Love me, love my dog. [Latin proverb]

He that strikes my dog, would strike me if he durst. [An old Scottish proverb]

Whosoever loveth me, loveth my hound. [Sir Thomas More: Sermon on the Mount]

Every time I come to town
The boys keep kickin' my dawg around;
Makes no difference if he is a hound,
They've got to keep kickin' my dawg around. [Champ Clark's campaign song, 1912]

He asks no angel's wing, no seraph's fire,
But thinks, admitted to that equal sky,
His faithful dog shall bear him company. [Alexander Pope]

He that lies with the dogs, riseth with fleas. [George Herbert]

Like ... a dog in the manger, he doth only keep it because it shall do nobody else good, hurting himself and others. [Robert Burton]